**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marion JOHNSON, Marshall Johnson, Willie Lee Dancy, Defendants–Appellants.**

**Nos. 88–2814, 88–2739 and 88–2740.**

United States Court of Appeals, Tenth Circuit.

Aug. 9, 1990.

D. Blair Watson, Asst. U.S. Atty. (Robert E. Mydans, U.S. Atty., with him on the brief) Oklahoma City, Okl., for plaintiff-appellee.

Bob G. Carpenter, Oklahoma City, Okl., for defendant-appellant, Marion Johnson.

Paul Antonio Lacy (Gary W. Briggs, with him on the brief) of Lacy & Briggs, Oklahoma City, Okl., for defendant-appellant, Marshall Johnson.

Jack D. Pointer, Jr., of Oklahoma City, Okl., for defendant-appellant, Willie Lee Dancy.

Before SEYMOUR and ANDERSON, Circuit Judges, and KANE, Senior District Judge*.

KANE, Senior District Judge.

Marion Johnson, Marshall Johnson and Willie Lee Dancy are three of eight defendants convicted for various offenses arising out of activities of the Sanders heroin ring which was centered in Oklahoma City, Oklahoma. We have considered previously the arguments of other defendants involved in these crimes. *See United States v. Rogers*, 899 F.2d 917 (10th Cir.), *cert. filed*, No. 89–7763 (June 15, 1990); *United States v. Williams*, 897 F.2d 1034 (10th Cir.1990); *United States v. Ware*, 897 F.2d 1538 (10th Cir.), *cert. denied*, — U.S. —, —, 110 S.Ct. 2629, 2630, 110 L.Ed.2d 649, 650 (1990); *United States v. Baggett*, 890 F.2d 1095 (10th Cir.1989). We now address the contentions of the remaining defendants.

## MARION JOHNSON

Marion Johnson was indicted on twenty-six counts of drug violations. As indicated by the number of charges against her, she

---

* Honorable John L. Kane, Jr., United States Senior District Judge for the District of Colorado, sitting by designation.

was one of the prime players in the ring. She was convicted on all charges except one distribution charge, which was dismissed. Johnson now appeals her conviction on five grounds. First, she argues that the trial court should have declared a mistrial when it was discovered that one or more members of the jury saw her in handcuffs. Second, she contends that her conviction on related charges violates her constitutional right against double jeopardy. Third, she asserts that the trial court should have suppressed certain wiretap evidence because the tap was illegal. Her fourth and fifth arguments are dependant on the success of her third argument: if the wiretap was illegal and the fruits of the wiretap are suppressed, there is insufficient evidence to convict her on all charges. We affirm the trial court's rulings and uphold the convictions.

## I. *Facts.*

Johnson's role in the Sanders conspiracy was to supervise the street sales of heroin made by co-defendants Ware and Daniels and, on occasion, by her brother Marshall Johnson. She describes the facts of this case through the testimony introduced against her at trial. The testimony of police detective Thomas Tehrune was introduced to establish evidence of the conspiracy and to permit the later introduction of co-conspirator testimony. Detective Tehrune described wiretap evidence in which Johnson spoke with certain co-defendants about heroin transactions and surveillance revealing Johnson's regular presence with the defendants convicted on conspiracy charges. Other witnesses connected Johnson to the conspiracy, identifying her as the street sales manager for the organization and connecting her with specific drug transactions.

## II. *Issues.*

### A. Mistrial for Juror Prejudice.

■ Johnson argues that she was entitled to a mistrial when one or more jury members saw her handcuffed to other defendants. We have held that a juror's fleeting glance of a defendant in handcuffs

does not warrant a mistrial, *Glass v. United States,* 351 F.2d 678, 681 (10th Cir.1965), and other circuits have recently reaffirmed this principle. *See, e.g., United States v. Garcia–Rosa,* 876 F.2d 209, 236 (1st Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 742, 107 L.Ed.2d 760 (1990); *United States v. Halliburton,* 870 F.2d 557, 560–61 (9th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 575 (1989). The trial court made a full inquiry as to whether this incident would prejudice the jury. No juror indicated any inability to be impartial. The denial of a mistrial was correct.

### B. Double Jeopardy.

■ Johnson next questions her multiple convictions on racketeering, RICO conspiracy and conspiracy to distribute heroin charges in light of the fifth amendment's prohibition against double jeopardy. In *United States v. Cardall,* 885 F.2d 656 (10th Cir.1989), we outlined the analysis of a double jeopardy claim. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, 'the test to be applied to determine whether [prosecution for both violates double jeopardy] is whether each provision requires proof of a fact which the other does not.'" *Id.* at 665 (citing *United States v. Blockburger,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). In *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), the Supreme Court indicated that the *Blockburger* test is primarily a rule of statutory construction to help determine legislative intent.

Johnson makes a similar argument as the defendant in *Cardall,* namely that it is impossible that she could be convicted on so many charges arising out of the same conduct without this violating the double jeopardy clause. In *United States v. Kragness,* 830 F.2d 842 (8th Cir.1987), the Eighth Circuit directly confronted this argument. In *Kragness,* the defendants were charged with RICO and RICO conspiracy violations, as well as conspiracy to import and to distribute certain drugs, interstate travel, use of the telephone, and other related drug charges. *Id.* at 853.

They argued that their conviction on RICO conspiracy and drug conspiracy charges violated the constitutional prohibition against multiple punishments for the same crime. *Id.* at 863.

Although the court concluded that, under the *Blockburger* test, the elements of the RICO conspiracy and conspiracy to distribute charges overlapped, this was not determinative. Under the further guidance of *Garrett,* the court held that Congress, in enacting the RICO statute, "fully intended to permit cumulative punishments," and that the defendants' punishment on RICO and drug conspiracy charges was therefore not constitutionally prohibited. *Id.* at 864; *see also United States v. Grayson,* 795 F.2d 278, 282–83 (3d Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987). Consequently, we conclude that Johnson's similar multiple convictions do not constitute double jeopardy.

### C. Legality of Wiretap.

Johnson makes the same arguments concerning the legality of the wiretap which were raised by her codefendants, Ware and Daniels. In *United States v. Ware,* 897 F.2d at 1540–41, we rejected those arguments and affirmed the district courts ruling that the wiretap was not unlawfully executed. It would serve no useful purpose to repeat our analysis here. Again, for the same reasons, we affirm the ruling.

### D. Sufficiency of Evidence.

Johnson's final arguments concern the sufficiency of the evidence to sustain her convictions if the wiretap evidence is excluded. It is possible that, if the wiretap evidence is found to have been illegally obtained, there would be insufficient evidence to sustain her conviction on some of the charges. However, at least three other witnesses testified as to her complicity in the organization. Nevertheless, we think it is unnecessary to consider this issue because the wiretap itself was not illegal under Oklahoma law.

## MARSHALL JOHNSON

Marshall Johnson appeals his conviction on charges of distribution of two grams of heroin and his sentencing to twenty-seven months in jail and three years of supervised release. Johnson appeals on five grounds: (1) that the trial court erred by denying his motion for acquittal on the count leading to his conviction, (2) that his trial should have been severed after he was acquitted on conspiracy charges, (3) that his sentence violates the double jeopardy clause of the fifth amendment, (4) that his sentence violates due process, and (5) that his sentence was incorrectly calculated under the Sentencing Guidelines. We affirm the trial court's rulings and affirm the convictions and sentence.

### I. *Facts.*

Marshall Johnson was originally indicted on five counts: racketeering, conspiracy to violate racketeering laws, conspiracy to distribute heroin, distribution of two grams of heroin, and distribution of twenty grams of heroin. During trial, he was acquitted on all charges except the two-gram heroin distribution charge because the court determined that there was insufficient evidence connecting him with the other counts. His conviction on the two-gram count is premised on his liability as an aider and abettor.

The facts leading to Marshall Johnson's conviction are not in dispute. On December 8, 1987, Elizabeth Brown and Richard ("Dickey") Thompson came to Oklahoma City to purchase heroin from Johnny Sanders, leader of the heroin ring. They contacted him by phone, and he instructed them to talk to Delma Hill or Marion Johnson (the defendant's sister) at the Masters Club.

When they arrived at the club, Marion Johnson was not there, and Hill instructed Brown to talk to Marion's brother, Marshall Johnson. Marshall then called Marion, and put Brown on the line to talk to her. Brown then asked Marion Johnson over the phone for eight to ten pills or balloons of heroin. Marshall Johnson then took back the phone and spoke briefly with his sister. When he hung up, Brown hand-

ed him money for the drugs, which she expected would be sold to her at a discount price. Marshall Johnson then told Brown to wait at the club, and left with the money.

While he was gone, Marion Johnson called Brown back and told her that the drugs would not be sold at a discount price. Marshall Johnson then returned with Brown's money, gave it back to her, and told her to count it to make sure it was all there. The next day, Brown successfully purchased ten pills of heroin from Hill at a nearby car wash operated by ringleader Sanders. The pills were supplied to Hill by Marion Johnson. Marshall Johnson was convicted of aiding and abetting this transaction.

## II. *Issues.*

### A. Motion for Acquittal.

■ Marshall Johnson first contends that the trial court erred by denying his motion for acquittal on this two-gram charge. His primary argument is that, since the drug transaction at the Masters Club was never consummated and he did not participate in the later drug sale at the car wash, he cannot be convicted of aiding and abetting the two-gram car wash sale. The government asserts the fact that the December 8 sale at the Masters Club was not completed does not absolve Marshall Johnson of liability for the subsequent transaction because he assisted in bringing that transaction about.

On a motion for acquittal under Fed.R. Crim.P. 29(a), the issue is whether, taken in the light most favorable to the government, there is substantial evidence from which a reasonable jury might properly find the defendant guilty beyond a reasonable doubt. *United States v. Peveto*, 881 F.2d 844, 860 (10th Cir.), *cert. denied*, ––– U.S. –––, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). The standard is the same on appellate review. *Id.* The question in this case is whether Marshall Johnson's participation in the unconsummated Masters Club transaction is sufficient to connect him with the later heroin sale at the car wash. The government cites a Fourth Circuit case,

*United States v. Pino*, 608 F.2d 1001 (4th Cir.1979), to illustrate that an unconsummated drug transaction can serve as the predicate for an aiding and abetting conviction related to a later transaction. In *Pino*, an undercover informant arranged a drug sale from one Herring. The informant was unable to find Herring, and asked the defendant Pino where he might find Herring. Pino responded that he knew the details of the transaction and attempted to find the package of heroin concealed in a can in a dumpster. Pino was unable to find the can with the heroin in it, and the deal did not go through. Later that day, the informant was able to meet up with Herring, and Herring located the can and sold the heroin to the informant. Pino was convicted of aiding and abetting this sale. The conviction was upheld on appeal, because "[w]hile Pino did not locate the beer can containing heroin, he clearly wished to keep the transaction alive and actively brought it closer to completion. His actions served to keep the prospective purchaser's interest engaged." *Id.* at 1003.

We have ruled that to convict a defendant of aiding and abetting, the government must show that the defendant

> "willfully associated himself in some positive way with the criminal venture by showing that he has joined the enterprise as something he wishes to bring about and by seeking to make it succeed by some action on his part." Under the [*U.S. v.*] *Taylor* [612 F.2d 1272 (10th Cir.1980)] case there must be a showing that defendant knowingly associated herself in some way with the criminal venture. The necessary association or participation may be established by circumstantial evidence, however, and evidence of "relatively slight moment may warrant a jury's finding of participation."

*United States v. Zamora*, 784 F.2d 1025, 1031 (10th Cir.1986) (citations omitted). Here Marshall Johnson's conduct was not mere negative acquiescence. As with Zamora, his actions served to keep the prospective purchaser's interest engaged.

B. Severance after Acquittal on Conspiracy Charges.

■ Johnson next argues that it was prejudicial error for the lower court not to have severed his trial after he was acquitted on the majority of the charges against him. It is undisputed that counsel for Marshall Johnson did not move for a severance after the acquittal. Thus, Johnson must demonstrate that actual prejudice resulted from the joint trial. *United States v. Cardall*, 885 F.2d at 667–68; *United States v. Killip*, 819 F.2d 1542, 1547 (10th Cir.), *cert. denied*, 484 U.S. 987, 108 S.Ct. 505, 98 L.Ed.2d 504 (1987).

Johnson attempts to show actual prejudice by arguing two points. First, he argues that the circumstances during trial demonstrate actual prejudice, in that there was a great disparity between the proof against him and his co-defendants, the evidence against him was presented in a spread-out time frame, the evidence was not easily compartmentalized with respect to each defendant, and the judge entered delayed rulings on some testimony which prejudiced his defense. Second, he contends that the conspiracy charges were brought against him in bad faith because he was only indicted after the government learned of his identity when he appeared at his sister's preliminary hearing.

Johnson's argument relating to circumstances at trial has some support. Several courts have held that a defendant can be seriously prejudiced in a multi-defendant conspiracy case, when the conspiracy charges against the defendant are dropped and the remaining charges involve only a small proportion of the evidence. *See, e.g.,* *United States v. Castro*, 829 F.2d 1038, 1046–47 (11th Cir.1987); *United States v. Branker*, 395 F.2d 881 (2d Cir.1968), *cert. denied*, 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 573 (1969). Johnson argues that the trial court exacerbated the problem by failing to instruct the jury on its need to view the evidence separately with respect to each defendant. The government disputes this contention, citing portions of the record where such instructions can be found.

Johnson's situation is very similar to that described in the *Castro* and *Branker* cases cited above. On the other hand, the government notes that defense counsel effectively emphasized the limited evidence against Marshall Johnson in his closing argument, and the fact that the jury acquitted another defendant on a conspiracy charge indicates that it was able to separate out the evidence against each defendant. *See United States v. O'Connell*, 841 F.2d 1408, 1433 (8th Cir.), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988); *United States v. Stackpole*, 811 F.2d 689, 694 (1st Cir.1987).

Johnson's second argument, that the conspiracy charges were brought against him in bad faith, stands on weak ground. Johnson intimates that, during a recess in the grand jury proceedings leading to his indictment, the prosecutor suggested to one witness, Pearl Chilcott, that she had forgotten to implicate Johnson in the conspiracy. Chilcott was asked about this during the hearing, and she stated that she did not identify Johnson because she understood the pre-recess question to refer only to street runners in the organization, and his later question to be directed more broadly to all members of the organization. This recitation does not amount to bad faith under any rational interpretation.

C. Sentence in Violation of Double Jeopardy/Due Process.

■ Mr. Johnson's remaining arguments focus on his sentence. Mr. Johnson's double jeopardy argument is that the court considered his involvement in the conspiracy to establish his base offense level,[1] even though Johnson was acquitted on the conspiracy charges. According to Johnson, this amounts to a second trial on the conspiracy charges. Second, he argues that his sentence was based on unreliable testimony of his complicity in the conspiracy, in violation of his right to due process. The government responds that the judge's con-

---

**1.** The court set Johnson's base offense level at 18. Without the consideration of his involve-

ment in the conspiracy, Johnson contends that his base offense level would have been 12.

sideration of his conspiracy-related activities was proper and that the evidence regarding his activities was sufficiently reliable.

Several courts have considered the extent to which uncharged conduct or conduct related to a dismissed charge may be considered during sentencing under the Guidelines. In *United States v. Juarez–Ortega*, 866 F.2d 747 (5th Cir.1989), the Fifth Circuit rejected the defendant's contention that his sentence on drug charges was improperly enhanced based on conduct related to a firearm count upon which he was acquitted. The court stated that,

> [although the jury may have determined that the government had not proved all of the elements of the weapons offense beyond a reasonable doubt, such a determination does not necessarily preclude consideration of underlying facts so long as those facts meet the reliability standard. The sentencing court was not relying on facts disclosed at trial to punish the defendant for the extraneous offense, but to justify the heavier penalties of the offenses for which he was convicted.]

*Id.* at 749; *see also United States v. Smith*, 887 F.2d 104 (6th Cir.1989) (sentencing properly based on amount of cocaine in count dismissed under plea agreement); *United States v. Guerrero*, 863 F.2d 245 (2d Cir.1988) (defendant admitted involvement in dismissed drug count in stipulation; therefore, sentencing appropriately based on such conduct). The above rationale in *Juarez–Ortega* likewise indicates that Johnson's double jeopardy argument is without merit, since there has been no separate punishment for the acquitted crime, only an enhancement to the sentence of a convicted crime. *Cf. United States v. Koonce*, 885 F.2d 720 (10th Cir.1989) (permitting defendant to be tried on Utah crime although underlying conduct used to enhance sentence for earlier South Dakota crime; double jeopardy not violated when conduct constituting crime simply considered during sentencing).

*Juarez–Ortega, Smith* and *Guerrero* are distinguishable, however. In these cases, the defendant did not contest that he had committed the conduct underlying the dismissed charge or the charges were dismissed by agreement. In this case, Johnson does not concede his involvement and challenges the reliability of the evidence upon which findings in the presentence report were based. Under these circumstances, a different standard should apply.

In *United States v. Landry*, 709 F.Supp. 908 (D.Minn.1989), Landry was one of four defendants charged in a five-count indictment with cocaine-related drug crimes. None of the defendants went to trial. Landry plead guilty to count five of the indictment for distribution of two ounces of cocaine. . He was not charged with three of the other four counts of the indictment. The other defendants also plead guilty to the counts involving them. *Id.* at 911.

Landry's presentence report calculated his base offense level at 20. The probation office arrived at this figure by aggregating all of the cocaine related to all counts in the indictment, plus an additional amount not charged but estimated to be involved in the transaction. This aggregate amount included amounts for counts for which Landry was not charged. The court rejected this calculation on due process grounds. *Id.* at 912.

> Certainly the government may bring disputed information to the court's attention; indeed it has a duty to do so. However, the court will not use the information as a basis for calculating the guideline offense level or criminal [sic] history score unless the government can establish the reliability of the information by a preponderance of the evidence. In Landry's case the government has provided no evidence to tie the defendant to counts II and III of the indictment, and insufficient evidence to warrant consideration of the drugs in count IV. . . .

*Id.* at 913; *see also Smith*, 887 F.2d at 108.

In this case, the only evidence linking Marshall Johnson to the conspiracy was the testimony of Pearl Chilcott. Ms. Chilcott testified that she dealt heroin for Johnson's sister, Marion. She stated that, on one occasion, Marshall Johnson delivered 100

balloons of heroin to her for his sister, and that, on several occasions, he was present during her discussions with Marion Johnson about certain transactions. The trial court found Chilcott's testimony to be so lacking in specificity that Marshall Johnson could not be expected to defend against it and consequently dismissed the conspiracy charges against him. Later, however, the court ruled under Fed.R.Evid. 404(b) that Chilcott's testimony was admissible to show Johnson's knowledge and intent with respect to the distribution charge, "given the essential knowledge of the transaction charged in 53 [the distribution charge], the proximity of time, the similarity of the players in the game...." *See* Appellant's Brief at 6.

Johnson argues that this evidence does not have sufficient indicia of reliability for use during sentencing. However, the defendant's motion for acquittal was not granted because of insufficient evidence; rather, the district court was concerned that the witnesses who testified to their purchases of heroin from Marshall Johnson could not pinpoint more precisely the dates on which those transactions occurred. As reflected in the trial court's Rule 404(b) ruling above, the disputed evidence was admitted only with respect to the distribution charge and *not* with respect to the conspiracy charge. The sentencing judge is not limited to information that would be admissible at trial.

D. Other Sentencing Issues.

Marshall Johnson also argues that the sentence itself was miscalculated under the Guidelines, based on the arguments addressed above and *several new contentions.* The new contentions are that he was entitled to a greater reduction than the judge awarded for his limited role in the crime, that his sentence should not have been enhanced due to his alleged obstruction of justice, and that he should have been entitled to a reduction for his acceptance of responsibility.

On the issues relating to reductions for his role in the crime and for acceptance of responsibility, there was evidence relating to his participation in the conspiracy. Moreover, while a defendant may not be denied a sentence reduction for failing to accept responsibility for dismissed charges, *see United States v. Perez–Franco,* 873 F.2d 455, 464 (1st Cir.1989), appellate review of a trial court's finding on this issue must be highly deferential. We believe the finding in this case is buttressed by Johnson's obstruction of justice. As to that issue, Johnson asserts that the testimony of a police officer contained in the presentence report that he had threatened certain witnesses was devoid of reliability. However, the court may consider hearsay evidence during sentencing, so long as it does not "rely on 'misinformation of constitutional magnitude.'" *United States v. Sciarrino,* 884 F.2d 95, 97 (3d Cir.) (citing *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972), *cert. denied,* —— U.S. ——, 110 S.Ct. 553, 107 L.Ed.2d 549 (1989)). This information did not reach that scope.

## WILLIE LEE DANCY

Willie Lee Dancy was convicted of four charges relating to his participation in the Sanders heroin ring. These charges were for RICO violations, conspiracy to violate RICO, conspiracy to possess with intent to distribute heroin, and possession with intent to distribute heroin. Dancy makes four assertions in this appeal: (1) that the court's finding of Dancy's involvement in the conspiracy was based on insubstantial evidence and improperly admitted co-conspirator testimony, (2) that the government failed to prove that Dancy committed two predicate acts of racketeering, (3) that Dancy's motion for acquittal on conspiracy charges should have been granted, (4) that the court erred in denying a mistrial. We affirm the trial court's rulings and uphold the convictions.

### I.  *Facts.*

Dancy was alleged to be one of the suppliers of heroin to the Sanders organization. During trial, Renee Sanders testified that, in the summer of 1987, Dancy sold heroin to Johnny Sanders, leader of the

organization. In her testimony, Renee Sanders related that Johnny Sanders had decided to travel to Los Angeles to consider Dancy as a new source of heroin because he was displeased with his current source and purchased heroin from Dancy at that time. Likewise, Darlene Daniels testified that Dancy had sold heroin to Sanders in November, 1987. Finally, police detective Digby intercepted a phone call from Dancy to Sanders on November 25, 1987 and police detective Tehrune observed Dancy in Oklahoma City at various locations connected with Sanders on November 28, 1987. Based on this evidence, Dancy was convicted on all charges.

## II. *Issues.*

A. Evidence to Support a Finding of Conspiracy.

Dancy asserts the district court erred in admitting the hearsay testimony of Renee Sanders, an alleged co-conspirator, to establish Dancy's connection to the conspiracy, because there was insufficient evidence independent of this testimony to connect him to the conspiracy. Under Fed.R. Evid. 801(d)(2)(E), statements by a co-conspirator during the course and in furtherance of the conspiracy are admissible as an exception to the hearsay rule.

We have established a three-part test for the admission of co-conspirator hearsay evidence under Rule 801(d)(2)(E). The court must determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy. *See United States v. Hernandez*, 829 F.2d 988, 993 (10th Cir.1987), *cert. denied*, 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988). The court was at one time limited to consideration of evidence independent of the co-conspirator testimony in making the above determinations, but under the recent Supreme Court ruling in *Bourjaily v. United States*, 483 U.S. 171, 179, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987), this is no longer so. The court may now examine the hearsay statements sought to be admitted as well as the independent evidence presented as "at least a partial basis for the findings necessary to admit the statements into evidence." *Hernandez*, 829 F.2d at 993; *see also United States v. Cardall*, 885 F.2d at 669 n. 24.

Given the Supreme Court's ruling in *Bourjaily*, there is no question that the trial court was correct in finding that Dancy was a member of the conspiracy (relying in part on Renee Sanders' testimony) and thus that Renee Sanders' testimony was admissible. Her testimony is persuasive evidence that Johnny Sanders, the ringleader, had an established relationship with Dancy before the transaction and that Sanders intended to use Dancy as the new supplier of heroin to his organization.[2] The testimony of Darlene Daniels and the police officers conducting the surveillance further connect Mr. Dancy to the organization at later dates.

B. Two Predicate Acts of Racketeering.

Dancy next argues that he cannot be convicted of racketeering charges because the government did not prove two predicate acts of racketeering. Under the RICO statute, 18 U.S.C. § 1961, to be convicted of a crime in connection with a "pattern of racketeering activity," the defendant must have committed at least two racketeering-related crimes in a ten-year period. *See Cardall*, 885 F.2d at 682. Although his arguments are far from clear, it appears that Dancy contends (1) that the predicate act of interstate travel was not supported by the evidence, (2) the predicate act of

---

**2.** Dancy additionally argues that the portions of Renee Sanders' testimony connecting him to the organization were mere narrative and therefore inadmissible under the co-conspirator exception. The government cites substantial portions of this testimony in its brief which reveals that the central purpose of the Sanders' visit to Dancy was to investigate him as a regular source of supply, not to conduct a one-time purchase of heroin. We disagree with Dancy's characterization of these comments as mere narrative. *See United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir.), *cert. denied*, 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988).

selling heroin to Sanders does not connect him to the organization because he could have sold heroin to anyone, (3) the predicate acts were not separate crimes, and (4) all that was proved was a simple buy-sell transaction which cannot form the basis for a conspiracy charge.

Dancy's first two contentions require little discussion. There is ample evidence to support the interstate travel offense. Likewise, Dancy's argument that his selling heroin to the acknowledged leader of the conspiracy establishes no connection to the conspiracy is ludicrous. As to his third contention, Dancy inaccurately argues that the predicate acts of conspiracy to distribute and interstate travel in aid of a conspiracy to distribute arose out of the same transaction. While it is true that "it is not proper under RICO to charge two predicate acts where one action violates two statutes," *United States v. Kragness*, 830 F.2d at 861, the indictment reveals that the interstate travel charge related to Dancy's November heroin distribution. The conspiracy to distribute charge covered a much broader timeframe, and encompassed another sale made by Dancy in the summer of 1987, as well as other conspiratorial activities.

Finally, Dancy's buy-sell argument is likewise without merit. There are several cases that hold that " 'proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy.' " *United States v. McIntyre*, 836 F.2d 467, 471 (10th Cir.1987) (citing *United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979)). These cases are inapposite because Dancy was the *seller*, not the *buyer*, in the transaction in question. He cites no cases that apply this rule to a seller. Moreover, there is ample additional evidence, which viewed in the light most favorable to the government, point to his strong connection to the Sanders heroin organization and undermine his argument that he only made a single sale. Therefore, we conclude that the government did establish two predicate

racketeering activities to justify Dancy's conviction on the RICO charges.

## C. Motion for Acquittal Based on Single Sale.

As described above, Dancy's argument that he should have been acquitted on conspiracy charges because he was only a one-time seller of heroin to the Sanders organization is both factually and legally unsound. Therefore, the district court did not err in denying his motion for acquittal on this basis, nor did it err in failing to instruct the jury on this theory.

## D. Motion for Mistrial Based on Brady Disclosure.

Dancy's final argument is that his motion for a mistrial was erroneously denied when it was revealed during trial that one corroborating witness, Andrea Childress, was the subject of an FBI investigation for conducting a scam operation while in jail. Dancy concedes that, "as soon as the information became available to the prosecutors, they immediately and without hesitation provided all documents to the court and to defense counsel." Dancy Brief at 33. Moreover, Dancy does not allege that the prosecution acted in bad faith, and it is clear from the record that defense counsel were permitted to cross-examine Childress extensively after the disclosure. Nevertheless, Dancy contends that this was a *Brady* violation because, had he had more time to review the new evidence, Dancy could perhaps have bolstered his alibi based on Childress' later cross-examination testimony.

Dancy's argument on this point is entirely speculative and, for the most part, irrelevant. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), simply holds that the defendant must be shown all exculpatory evidence in the prosecution's possession. *United States v. Vap*, 852 F.2d 1249, 1256 (10th Cir.1988). Evidence that is wrongfully withheld must be material to the defense for there to be prejudice. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *Hopkinson v. Shilling-*

*er*, 866 F.2d 1185, 1212 (10th Cir.1989). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383.

In this case, the evidence as to Childress' participation with Daniels in a scam operation while in jail is simply more evidence of her bad character. Dancy concedes that, as such, it was merely cumulative. Dancy Brief at 34. Therefore, it was not "material" under the standard described in *Bagley*. Dancy's argument that he needed more time to evaluate the new evidence and to question Childress to try to uncover a new witness to corroborate certain dates is immaterial to his *Brady* argument. If anything, he should have moved for a continuance. Consequently, there was no *Brady* violation.

### CONCLUSION.

We affirm the district court's ruling on all issues.