955 F.2d 49
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John GREEN, Defendant-Appellant.
 No. 91-6004.
 United States Court of Appeals, Tenth Circuit.
 Feb. 14, 1992.
 
 1
 Before BALDOCK and EBEL, Circuit Judges, and ALDON J. ANDERSON, Senior District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 ALDON J. ANDERSON, Senior District Judge.
 
 
 4
 On August 8, 1990, a Grand Jury returned a three count indictment charging defendant-appellant John Green ("Green") with conspiracy to distribute cocaine under 21 U.S.C. § 846 in Count 1 and aiding and abetting the distribution of cocaine under 21 U.S.C. § 841(a)(1) in Count 3.[1] Green entered a plea of not guilty to these charges and elected to be tried by a jury. On October 17, 1990, the jury returned a verdict finding Green guilty on Counts 1 and 3. Green appeals his convictions on three grounds: 1) the trial court erred in not entering a judgment of acquittal on the conspiracy charge for insufficient evidence; 2) the trial court erred in not entering a judgment of acquittal on the aiding and abetting charge for insufficient evidence; and, 3) the trial court erroneously instructed the jury as to the culpability of co-conspirators for the crimes of the conspiracy. We find appellant's arguments to be without merit.
 
 I.
 
 5
 At trial, the government called three witnesses. The witnesses testified to the following facts.
 
 
 6
 An undercover Federal Bureau of Investigation agent named Zimms ("agent Zimms") established a relationship with a suspected cocaine dealer named Charles Thompson in the Summer of 1988. Trans. at 160. In January of 1989, agent Zimms asked Thompson to arrange a purchase of cocaine for him. Trans. at 162-63. At the same time, an acquaintance of Thompson's, Lamont "Tiger" Harris ("Harris"), contacted Thompson and asked if Thompson could arrange a sale of some cocaine for him. Trans. at 59. As a result, Thompson agreed to meet with Harris.
 
 
 7
 Thompson met with Harris, appellant Green, and Bernard Hall in an apartment shared by Harris and Green in Norman, Oklahoma. Id. The meeting was for the purpose of making plans to begin selling and distributing cocaine. Thompson had no prior contacts with Harris, Green, or Bernard Hall regarding narcotics transactions. At the meeting, Harris indicated that he had a source of unlimited amounts of cocaine in nearby Oklahoma City. Trans. at 61. Thompson agreed generally to supply Harris with people to purchase cocaine from Harris. Id. Thompson also agreed to introduce Harris to agent Zimms for the purpose of a one ounce cocaine transaction. Id. Harris and Thompson understood that if the initial deal was satisfactory, agent Zimms would purchase more cocaine and Thompson would not handle those transactions. Id. Harris did the majority of the talking at the meeting. Id. Thompson did believe, however, that appellant Green stated he would be the one Thompson would introduce to agent Zimms. Trans. at 92.
 
 
 8
 A short time after the meeting, Thompson arranged a sale of one ounce of cocaine to agent Zimms for $1,400. Trans. at 64. Thompson then informed Harris and appellant Green of the arrangements. Id. Over the next few days, Thompson exchanged telephone calls and had in person meetings with both Harris and appellant Green to discuss the transaction. Trans. at 66 Thompson stated that Green knew as much about the deal as Harris did. Id. The first scheduled transaction with agent Zimms had to be canceled due to a problem with the source of cocaine. Trans. at 65. Either Harris or appellant Green contacted Thompson when they were prepared to schedule another time for the deal to take place. Trans. at 66-67.
 
 
 9
 On January 26, 1989, Harris and another friend named "Feets" Hill ("Feets") drove to Oklahoma City to obtain the cocaine to sell to agent Zimms. Trans. at 8, 10-11. After getting the cocaine, Harris telephoned Thompson to tell him that he had the cocaine and was ready to proceed with the sale. Trans. at 69. Harris and Thompson agreed that Harris, Green, Thompson, and agent Zimms would meet behind a restaurant in Norman, Oklahoma, to conduct the sale. Id.
 
 
 10
 Thompson and agent Zimms drove to a tire store in their separate cars. Id. at 70. Agent Zimms gave Thompson a portion of the money for the cocaine. Id. at 71. Thompson then drove to the parking lot of a nearby check cashing store where he met appellant Green. Id. Green and Thompson spoke briefly in Thompson's car. Trans. at 71-72. Appellant Green was upset and told Thompson he did not like "Feets," the person who went to get the cocaine with Harris, and did not trust him. Id. After a few minutes, appellant Green got out of Thompson's car. Trans. 72-73. Harris then arrived and got into Thompson's car. Id. Harris, Thompson, and agent Zimms then completed the cocaine sale without any further assistance of appellant Green. Trans. at 75. After the transaction, Harris and Green left the site in the same car. Trans. at 77-78. Green's whereabouts during the transaction itself were unknown to the witnesses that testified.
 
 
 11
 Shortly after the transaction, agent Zimms discovered that the cocaine was short by approximately 11 grams. Trans. at 172. Agent Zimms contacted Thompson about the shortage. Trans. at 78. Thompson said he would contact Harris and Green to resolve the problem. Trans. at 79. The next day, Thompson went to Harris and Green's apartment. Id. Harris agreed they would have to pay for the shortage and felt that Feets was responsible for the shortage. Trans. at 80. Appellant Green was "pissed off" at Feets and wanted to go find him immediately. Id.
 
 
 12
 Approximately two to three weeks later, the shortage had not been resolved. Agent Zimms suggested to Thompson that he arrange a meeting with Harris and appellant Green. Trans. at 175-76. On February 10, 1989, agent Zimms met with Thompson, Harris and appellant Green at a shopping mall. Id. At the meeting, appellant Green said he could "vouch" for Harris and Thompson. Trans. at 179. At the meeting, Green told agent Zimms that he had been with Harris when he received the cocaine from Feets, that no one touched the cocaine other than Harris or Thompson after that time, and that neither Harris nor Thompson had anything to do with the shortage. Id. Presumably, therefore, Green believed that Feets was responsible for the shortage. Harris said he suspected his source was to blame for the shortage. Trans. at 180. Also at the meeting, appellant Green threatened to shoot holes in Feets' car to get his attention regarding the shortage. Trans. at 85. Law enforcement officers arrested Green and the others in the days following the meeting at the shopping mall.
 
 
 13
 The preceding occurrences are those demonstrated by the evidence presented at trial and not disputed by appellant Green before this court. A final factual note is that Thompson appears to have intended to split the money from the drug transaction with appellant Green and Harris equally. Trans. at 157.
 
 
 14
 At the close of the government's case in chief, Green moved for judgment of acquittal. Green asserted that the evidence presented was insufficient to support a jury conviction on the charge of either conspiracy to distribute or aiding and abetting. Green argued the evidence showed mere presence and knowledge but failed to show agreement to join or participation in the conspiracy. The trial court denied Green's motions. Green appeals the trial court's rulings on the same grounds argued at trial.
 
 
 15
 At the close of the trial, Green also objected to an instruction given by the trial court. The instruction purported to explain the liability of co-conspirators for the crimes of other co-conspirators. Green argued that the instruction misstated the applicable law. The district court overruled Green's objection and gave the instruction to the jury. Green challenges the trial court's ruling on appeal.
 
 II.
 A. Motions of Acquittal
 
 16
 Green's primary challenge to his convictions is that the trial court erred in failing to grant his motions for acquittal based on insufficiency of the evidence. Green argues that, at best, the evidence presented at trial demonstrated only that Green was present during some of the criminal conduct and knew about the plan to distribute cocaine. Green contends the evidence cannot support a conviction of aiding and abetting or conspiracy because it fails to demonstrate that he agreed to participate in the criminal conduct or sought to make it succeed.
 
 
 17
 On appellate review of a denial of "a motion for acquittal under Fed.R.Crim.P. 29(a), the issue is whether, taken in the light most favorable to the government, there is substantial evidence from which a reasonable jury might properly find the defendant guilty beyond a reasonable doubt." United States v. Johnson, 911 F.2d 1394, 1399 (10th Cir.1990) (citation omitted). The question presented in this case is whether the evidence of Green's conduct can support the requisite elements for the crimes of conspiracy and aiding and abetting. We have ruled that, to sustain a conviction for conspiracy, the evidence must demonstrate an agreement between two or more persons to violate the law, that the defendant knew the essential objectives of the conspiracy, and that the defendant knowingly and voluntarily became a part of the conspiracy. United States v. Fox, 902 F.2d 1508, 1514 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 199 (1990). To sustain a conviction for aiding and abetting, the evidence "must show that the defendant 'willfully associated himself in some positive way with the criminal venture by showing that he has joined the enterprise as something that he wishes to bring about and by seeking to make it succeed by some action on his part.' " United States v. Johnson, 911 F.2d 1394, 1399 (10th Cir.1990) citing United States v. Taylor, 612 F.2d 1272 (10th Cir.1980).
 
 
 18
 Green asserts that the evidence presented by the government shows no more than his mere presence and knowledge of the illegal activities. Green cites valid authority that mere presence and knowledge is not sufficient to constitute conspiracy or aiding and abetting. See, e.g., United States v. Hopkins, 716 F.2d 739, 748 (10th Cir.1985) (must prove more than mere knowledge of and acquiescence in conspiracy); United States v. Taylor, 612 F.2d 1272, 1275 (10th Cir.1980) (mere presence with knowledge at scene of crime is not aiding and abetting). Specifically, under the conspiracy conviction, Green contends no evidence supports findings that he agreed to the conspiracy or joined the conspiracy. Regarding the aiding and abetting conviction, Green argues that the evidence fails to support a finding that he sought to make the undertaking succeed by action on his part.
 
 
 19
 We find that the government presented substantial evidence, when viewed in the light most favorable to the government, from which a reasonable jury could have found that Green was more than simply present and actually participated in the undertaking to distribute cocaine. Undeniably, the evidence also demonstrates that a conspiracy did exist whether Green was a member or not. With regards to Green, the evidence presented showed that Green was present at the initial meeting to plan the cocaine sale. At that meeting, Green volunteered to be the "front man" that would actually meet with agent Zimms. Evidence was even presented from which a reasonable jury could determine that Green intended to be the person to cultivate a rapport with agent Zimms for the purpose of establishing him as a steady customer for cocaine. Trans. at 92. After the initial meeting, Green talked with Thompson in person and/or on the telephone to further plan the cocaine sale without anyone else present. Green was also with the conspirators during a portion of the cocaine sale and immediately after the transaction. After the cocaine sold was found to be short, Green actively tried to salvage the group's relationship with the buyer by claiming to have been with the cocaine since the group purchased it. Green even stated he would seek retribution against their supplier to placate the conspiracy's disgruntled customer. And, finally, Green appears to have held a financial stake in the outcome of the sale equal to that held by Harris and Thompson. See Trans. at 150-51. All of these facts are more than sufficient to permit a reasonable jury to determine that Green was not merely present but actively participated in and promoted the conspiracy to distribute cocaine. See generally United States v. Johnson, 889 F.2d 1032, 1035 (11th Cir.1989) (agreement to enter conspiracy can be shown by inferences from parties' conduct); United States v. Troutman, 814 F.2d 1428, 1446 (10th Cir.1987) ("Once a conspiracy is established, only slight evidence is needed to connect a co-conspirator"); United States v. Keller, 784 F.2d 1296, 1299 (5th Cir.1986) (defendant's financial stake in conspiracy can be relevant to establishing participation in scheme but is not determinative). The trial court properly denied Green's motion for acquittal.
 
 
 20
 B. Culpability of Co-Conspirators Instruction
 
 
 21
 Green also challenges his convictions by claiming the district court gave the jury an erroneous instruction regarding liability of co-conspirators. Green asserted in his brief that Instruction No. 30 given by the district court effectively directed a verdict on the aiding and abetting charge in violation of due process. At oral arguments, Green challenged the instruction by suggesting the court reexamine the validity of the accepted rule regarding liability of co-conspirators but provided no grounds to challenge the rule.
 
 
 22
 The instruction given by the trial court stated:
 
 
 23
 Every conspirator is guilty of the illegal acts that are done as part of and in furtherance of the conspiracy even though those acts are done solely by co-conspirators. Therefore, if you are satisfied beyond a reasonable doubt that, at the time the offenses alleged in Counts 2 and 3 were committed, a defendant had entered into and continued to be a member of an unlawful conspiracy as charged in Count 1 of the indictment, and if you further find beyond a reasonable doubt that the alleged acts charged in Counts 2 and 3 were committed while the conspiracy continued to exist and in furtherance of that conspiracy or as an object of that conspiracy, then you may find that defendant guilty of the offenses charged in Counts 2 and 3 as a co-conspirator even though he was not the person who actually committed or personally aided and abetted in the commission of the offenses charged in Counts 2 and 3.
 
 
 24
 Doc. 49, Instruction No. 30. Ultimately, Green's specific challenge to the instruction is that it relieves the government of its burden to make showings specific to Green for conviction. Green elaborates on his position by stating that the instruction permits a jury to convict him "of any crime committed by a co-conspirator regardless of the defendant's knowledge of the contemplated act of the co-conspirator(s)." Brief for Appellant at 16.
 
 
 25
 We find Green's position to be without merit. The instruction correctly states the law regarding the liability of co-conspirators. See Pinkerton v. United States, 328 U.S. 640, 647 (1946), reh'g denied, 329 U.S. 818 (1946); Nye & Nissen v. United States, 336 U.S. 613, 618 (1949). See also Pattern Jury Instructions of the District Judges Association of the Fifth Circuit, Instruction No. 2.23 (1990) (instruction substantially similar instruction reviewed in this opinion). The instruction does not eliminate the government's burden to produce individualized evidence of culpability. By its own terms, the instruction requires the jury to find beyond a reasonable doubt that the individual defendant was a member of the conspiracy as defined by law. The act of joining the conspiracy is the source of Green's criminal liability for the members of that conspiracy. See Pinkerton, 328 U.S. at 647. Under the instruction given, the jury could not convict Green unless it specifically found beyond a reasonable doubt that Green joined the conspiracy.
 
 
 26
 With regard to Green's assertion that the instruction permits his conviction for activities of which he was unaware, the law specifically permits such a result. The Fifth Circuit stated the rule succinctly in United States v. Tilton, 610 F.2d 302 (5th Cir.1980). The Tilton court stated, "[a] party to a continuing conspiracy can be held responsible for the substantive offenses committed by the co-conspirators if acts were committed in furtherance of a conspiracy even though [the defendant] neither participated in the act ... nor actually knew about it." Tilton at 309 (citations omitted). See Troutman, 814 F.2d at 1446 (10th Cir.1987) ("acts attributable to any member of the conspiracy are attributable to all other members"); United States v. Andrews, 585 F.2d 961, 964 (10th Cir.) (reviewing this and other principles of conspiracy law). Green has presented nothing to the court that causes us to question the continuing validity of this rule. For this reason, we find no error in the district court's instruction regarding the liability of co-conspirators for the substantive acts of other co-conspirators.
 
 III.
 
 27
 At trial, the government presented substantial evidence from which a reasonable jury could find that defendant-appellant Green committed the offenses of conspiracy and aiding and abetting as defined by federal law. The evidence presented demonstrated that Green was not merely present during the criminal activities of others but actively participated in and joined that activity seeking to achieve the success of the criminal undertaking. Furthermore, the jury instruction given by the district court accurately stated the law regarding the liability of a co-conspirator for the substantive acts of other co-conspirators. The court sees no reason to question the validity of the current state of that legal principle.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable Aldon J. Anderson, Senior District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Count 2 of the indictment did not relate to Green but charged only a co-defendant