## TOOISGAH v. UNITED STATES.
### No. 2652.

Circuit Court of Appeals, Tenth Circuit.
Aug. 5, 1943.

Lee Williams, of Oklahoma City, Okl. (Herbert K. Hyde, of Oklahoma City, Okl., and Roy St. Lewis, of Washington, D. C., on the brief), for appellant.

Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl. (John Brett, Asst. U. S. Atty., of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge, delivered the opinion of the court.

The appellant, Phillip Tooisgah, a full-blood Apache Indian, was indicted in the Western District of Oklahoma; was tried, convicted, and sentenced to life imprisonment for the murder of Lucy Tahdooahnippah, a full-blood Comanche Indian. Federal jurisdiction is sustained under R.S. Sec. 2145, 25 U.S.C.A. § 217, and Sec. 328 Criminal Code, 35 Stat. 1151, 18 U.S.C.A. § 548, by a stipulation on this record to the effect that the homicide occurred in Caddo County, Oklahoma, on the restricted allotment of Ellen Mulkehay, a full-blood Apache Indian, title to which was held in trust by the United States. See ch. 813, Sec. 6, 31 Stat. 672. The allotment was carved from lands formerly occupied by the Apache Tribe of Indians under the Medicine Lodge Treaty of 1867, 15 Stat. 581, 589, see Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299, and was Indian Country within the purview of R.S. 2145, supra. See Ex parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, 27 L. Ed. 1030; United States v. Pelican, 232 U. S. 442, 34 S.Ct. 396, 58 L.Ed. 676; United States v. Ramsey, 271 U.S. 467, 46 S.Ct. 559, 70 L.Ed. 1039; Ex parte Nowabbi, 60 Okl.Cr. 111, 61 P.2d 1139; Ex parte Pero, 7 Cir., 99 F.2d 28.

Conviction is based partially upon the written confession of appellant, and the sole question presented by this appeal is whether the trial court erred in admitting the confession in evidence, without first determining its voluntary character out of the presence of the jury. It is not contended that the confession was involuntarily obtained, or ultimately inadmissible in evidence, but it is contended that since the question of its voluntariness was challenged when offered, it was the inescapable duty of the court to conduct a preliminary inquiry out of the presence of the jury, for the purpose of determining whether the confession was obtained by the use of methods, or under circumstances which would render it inadmissible. This question is best answered by a recurrence to the circumstances under which the confession was obtained and admitted in evidence, as reflected by the record brought here.

Before the confession was offered in evidence, Hoyt Shelby, a special officer for the Indian Service, testified without objection that on June 3, 1942, he and a deputy sheriff went to the Kiowa Indian Hospital at Lawton, Oklahoma, where the appellant was confined. After having secured the permission of his attending physician, he and the deputy sheriff interviewed appellant concerning the death of Lucy Tahdooahnippah. Shelby testified he advised appellant that he was an officer making an investigation of the case; that he was not defending him, but was getting evidence for the prosecution; that the appellant had a right not to make any statements whatsoever, and he also had a right to counsel. But, according to Shelby's testimony, appellant stated, "There ain't anybody to blame but me, and I want to tell it just like it is." Appellant then related that on June 2, 1942, at about eight o'clock in the morning, he killed Lucy Tahdooahnippah, and left her lying over close to the big spring west of the house; that after he shot her, he shot himself, walked about fifteen steps south, passed out, and did not remember anything until

about five o'clock in the evening, after which he crawled to the house, hid the gun under the mattress or springs, and spent the night alone. When asked if he realized he was committing a serious crime, he said that he did, but that he "aimed to kill" himself also, and when asked why he did not kill himself, he replied "it hurt too much." Shelby further testified, without objection, that on the following day, June 4th, he returned to the Hospital, at which time the appellant voluntarily dictated a written statement to Mrs. Hardick, a clerk at the Hospital. The statement was dictated in the presence of Shelby, Mrs. Hardick, Mrs. Elliott, a technician, and the attending physician who was present part of the time.

When Shelby was asked to state if the appellant signed the statement, counsel for appellant objected, suggesting "that the proper procedure would be to excuse the jury from the courtroom until Your Honor determines whether or not the statement was voluntarily made." The court observed that the statement had not been offered in evidence, but if counsel would make an offer, he would "take it up." Counsel for the government continued to interrogate Shelby concerning the circumstances under which the statement was made, and Shelby testified that he told the appellant he did not have to make any statement, that anything he said would be used against him, and appellant stated, "I want to make the statement, I want to tell it just like it is—there is nobody to blame but myself and I want to tell it." At this point, the signature of the appellant was identified, and the statement was offered in evidence as his confession, whereupon counsel for appellant objected; asked that the jury be excused, and that the court determine whether the confession was voluntarily made, stating, "It is true the testimony has already developed the contents of the statement, but I think under the law Your Honor should determine whether or not the statement was made voluntarily and under what circumstances. For instance, whether he was under the influence of narcotics and one thing and another, and which Your Honor should determine in the absence of the jury." The court reserved his ruling "until we hear other testimony."

Mrs. Hardick was next called as a witness. She testified that she took the statement of appellant on the typewriter as he related it, and that Shelby advised him of his rights before he gave the statement. At this point, counsel for appellant again objected to the testimony, requesting the court to "pass upon the admissibility of the statement which is concurrent with this testimony, otherwise the statement goes in, but the statement amounts to a nullity." Whereupon the court stated, "Let the statement be admitted, the evidence is sufficient to admit the statement * * * I cannot conceive of any more competent evidence than is already in." Counsel for appellant again objected to the statement, and to the procedure, requesting the court to exclude the jury and determine whether the statement was voluntarily made. Other witnesses present when the statement was made, were called to corroborate the testimony of Shelby and Mrs. Hardick, to the effect that the statement was freely and voluntarily given, without any threats, promises, or inducements. The attending physician testified that the appellant was interviewed, the confession taken with his permission, and that he witnessed the signature of the appellant. He further testified that appellant's general condition was good, and that his mentality "was alright"; that he had slept very well that evening, in fact slept the entire night before, and was not under the influence of drugs or narcotics.

Thus, it is clear that the inquiry concerning the voluntary character of the confession was conducted in the presence of the jury, over the objection of the appellant. But, the testimony conclusively shows that the confession was given freely and voluntarily, without any threats, promises or inducements, and that the same was clearly admissible in evidence.

 A conviction based upon a confession not freely and voluntarily given, is a nullity and cannot stand. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. ——; Ziang Sung Wan v. United States, 266 U.S. 1, 45 S.Ct. 1, 69 L.Ed. 131; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568; Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Sparf & Hansen v. United States, 156 U.S. 51, 15 S. Ct. 273, 39 L.Ed. 343; Hopt v. People of Territory of Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262. Where, in the course of a criminal trial in the Federal courts, it appears that evidence in the form of a

confession has been obtained in violation of the legal rights of the accused, it becomes the duty of the trial court to entertain a motion for the exclusion of such evidence, and to conduct a hearing out of the presence of the jury, for the purpose of determining the substantiality of the motion. McNabb v. United States, supra; Harrold v. Territory of Okla., 8 Cir., 169 F. 47, 17 Ann.Cas. 868; Cohen v. United States, 7 Cir., 291 F. 368; Hale v. United States, 8 Cir., 25 F.2d 430; Rossi v. United States, 9 Cir., 278 F. 349; Mangum v. United States, 9 Cir., 289 F. 213; Murphy v. United States, 7 Cir., 285 F. 801; see also Annotations 102 A.L.R. 605. The manifest purpose of this rule is to make sure that the jury shall not be influenced by knowledge of the circumstances, the substance, or contents of a confession which is in fact incompetent evidence, People v. Farmer, 194 N.Y. 251, 87 N.E. 457, 464, and it is the duty of the trial court to diligently safeguard and protect the interest of the accused in this regard. If the court elects to determine the competency and admissibility of a confession in the presence of a jury, it does so at the risk of committing reversible error, because if the confession is incompetent and inadmissible, knowledge of the confession by the jury is apt to unduly influence its deliberations to the extent of depriving the accused of a fair and impartial trial, although the confession may have been excluded and the jury instructed not to consider it as part of the evidence. Harrold v. Territory of Okla., supra; People v. Farmer, supra; Browne v. State, 92 Fla. 699, 109 So. 811, 813.

Here, the voluntary character of the confession was challenged, and the court was asked to determine the issue out of the presence of the jury, but when the motion was first made, the testimony already admitted, without objection, had largely developed the circumstances under which the confession was given, and the insubstantiality of the motion was then quite apparent. The testimony already adduced gave no warning that the confession was involuntary; nothing had occurred tending to cast a doubt on its admissibility, consequently there was nothing for the court to determine outside the presence of the jury. It follows therefore, that the observance of the rule would have been merely mechanical. Cf. Story v. State, 73 Okl.Cr. 273, 120 P.2d 387; Browne v.

State, supra; People v. Farmer, supra. "The civilized conduct of criminal trials cannot be confined within mechanical rules." Nardone v. United States, 308 U.S. 338, 342, 60 S.Ct. 266, 268, 84 L.Ed. 307. McNabb v. United States, supra. Law suits are not tried by the square and compass, but by the trial judge's innate sense of justice. To be sure, he is guided by certain instruments called rules, but rules measure only the boundaries beyond which the ends of justice may not be reached. No prejudice resulted from the refusal of the trial court to conduct the hearing as requested.

The judgment is affirmed.