**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ernie Dimitric CARO, a/k/a Louis Caro, Defendant–Appellant.**

**No. 91–8012.**

United States Court of Appeals,
Tenth Circuit.

June 9, 1992.

---

Patrick J. Crank, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., with him on the brief), Cheyenne, Wyo., for plaintiff-appellee.

Richard Wolf of Wolf & Tiedeken, Cheyenne, Wyo., for defendant-appellant.

Before LOGAN and BRORBY, Circuit Judges, and OWEN,* District Judge.

BRORBY, Circuit Judge.

In December 1990, a jury convicted Ernie Caro on one count of conspiracy to possess with intent to distribute, and to distribute, cocaine and marijuana; and on five counts of unlawful use of a communication facility to facilitate the commission of felony violations of the federal Controlled Substances Act. Mr. Caro now appeals these convictions, asserting several bases of trial court error. We affirm Mr. Caro's conviction.

## I. Background

On March 23, 1990, the federal Grand Jury for the District of Wyoming returned a six count Indictment against the Appellant (Defendant) Ernie, aka "Louis", Caro. The Indictment charged Mr. Caro with conspiracy to possess with intent to distribute, and to distribute, in excess of 500 grams of cocaine and marijuana, in violation of 21 U.S.C. § 846 (Count One); and with unlawful use of a communication facility to facilitate the commission of felony violations of the federal Controlled Substances Act, in violation of 21 U.S.C. § 843(b) (Counts Two through Six).

* The Honorable Richard Owen, Senior District Judge for the Southern District of New York, sitting by designation.

These charges stemmed from Mr. Caro's involvement with a Wyoming cocaine and marijuana distribution organization established and led by Francis G. (Gus) Stallings, Jr. (Stallings) from early 1987 through May 1989. Mr. Caro, who resided in Phoenix, Arizona, was identified as a primary drug supplier for the Stallings organization based on 1) the interception of conversations resulting from a state court-authorized wiretap of Stallings' telephone between April 3, 1989, and May 3, 1989; and 2) the testimony of Brenda Stallings, Lisa Buttars, Richard Eugene Christianson, and Rhonda Shankle, coconspirators who became cooperating witnesses for the United States. The specifics of Mr. Caro's involvement will be discussed as necessary in the remainder of this opinion.

Mr. Caro pleaded not guilty to each of the charges in the Indictment. Nevertheless, a jury found him guilty on each count. On March 11, 1991, Mr. Caro was sentenced to six years imprisonment on count one, and to concurrent four year terms on counts two through six. He is presently in federal custody serving his sentence in this case.

## II. Contentions of Error

Mr. Caro presents eight contentions of error for consideration on appeal. We address each contention individually.

### A.

### *Miranda Violation/Voluntariness Hearing*

On July 31, 1990, Special Agent Tony Young of the Wyoming Attorney General's Division of Criminal Investigation interviewed Mr. Caro in Phoenix, Arizona. At the time, Mr. Caro was being held in the Maricopa County Sheriff Department's Durango Street Jail on traffic charges. A detainer had been lodged against him with regard to the Wyoming indictment. During the interview, Mr. Caro admitted being a heavy drug user. He also admitted knowing several of the coconspirators and having had telephone conversations with Mr. Stallings. However, Mr. Caro denied participating in any substantial drug transactions with Mr. Stallings.

Mr. Caro asserts two trial errors with regard to these statements. He first contends his in-custody statements to Agent Young should have been suppressed because they were acquired in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Second, Mr. Caro contends the trial court erred by holding a voluntariness hearing in front of the jury.

Mr. Caro's first contention is completely without merit. At the suppression hearing held November 7, 1990, Mr. Caro testified that prior to the interview Agent Young advised him of his right to remain silent and to an attorney. Mr. Caro further testified that he immediately requested an attorney but that Agent Young ignored his request. Agent Young, on the other hand, testified that Mr. Caro never requested the presence of an attorney. Rather, when asked if he were willing to discuss Mr. Stallings, Mr. Caro responded, "Sure. Fire away." Agent Young characterized Mr. Caro's attitude as "very arrogant and very cocky"; and, in fact, after Agent Young had terminated the interview because he felt that Mr. Caro was lying, Mr. Caro invited him back to discuss matters further.

■ The trial court denied Mr. Caro's motion to suppress, specifically finding that "Agent Young's testimony [was] more credible," and that Mr. Caro had voluntarily and knowingly waived his *Miranda* rights. Credibility determinations are for the trial judge, as factfinder. *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984). When reviewing the denial of a motion to suppress, this court must accept the trial court's fact findings unless those findings are clearly erroneous. *United States v. Corral*, 899 F.2d 991, 993 (10th Cir.1990). Moreover, we view the evidence in the light most favorable to the trial court's findings. *Id.*

■ Mr. Caro has revealed nothing in the record which suggests the trial court's credibility finding was clearly erroneous.

The matter simply boiled down to Mr. Caro's word against Agent Young's. The mere fact that Mr. Caro's testimony at the suppression hearing conflicted with that of Agent Young is insufficient in itself to require reversal. *United States v. Falcon,* 766 F.2d 1469, 1476 (10th Cir.1985).

Likewise, nothing in the record suggests the district court's finding that Mr. Caro had voluntarily and knowingly waived his *Miranda* rights was erroneous. Although we acknowledge the government was required to prove voluntariness by a preponderance of evidence, *id.,* Mr. Caro has never alleged, and the record does not support, the possibility that factors such as age, mental capacity, emotional condition, or the use of alcohol or narcotics played any role in his decision to speak directly to Agent Young. The record, when reviewed in the light most favorable to the trial court's ruling, demonstrates Mr. Caro was informed of his rights, stated that he understood his rights as they had been explained, and was not subjected to any threats or promises with respect to his participation in the interview. Looking at the totality of the circumstances—both the nature of the interrogation and the characteristics of the defendant—we hold this record is sufficient to support the trial court's denial of Mr. Caro's motion to suppress. *See United States v. Lux,* 905 F.2d 1379, 1382 (10th Cir.1990).

■ Mr. Caro next asserts the trial court committed reversible error by conducting a voluntariness hearing in the jury's presence. The events giving rise to this issue occurred as follows: First, in the context of the suppression hearing discussed above, the trial court specifically found that Mr. Caro had voluntarily and knowingly waived his *Miranda* rights. Later, at trial, when the government began to offer Mr. Caro's statements to Agent Young, defense counsel objected. At that point, the government asked the court to make a finding of voluntariness pursuant to 18 U.S.C. § 3501(a). The court then asked defense counsel if he had "[a]ny objection to that procedure." Defense counsel responded, "I think this is an issue raised previously,

Your Honor, and I would renew that." Evidently interpreting this vague objection as substantive rather than procedural, the court then commenced, in the jury's presence, to ask Agent Young whether any circumstances indicated the statement "fire away" was not voluntary; whether any force or duress was applied to Mr. Caro; and whether Mr. Caro understood he was free to leave the interview and not answer questions. Based on Agent Young's responses, the court determined Mr. Caro's statement "fire away" was a voluntary statement.

We are not convinced defense counsel adequately objected to the court's making a voluntariness determination in front of the jury; however, for the sake of argument we will assume the objection was sufficient and the trial court was in error. As early as 1943, this court warned that a trial court which determines the competency and admissibility of a confession in the presence of a jury, does so at the risk of committing reversible error. *Tooisgah v. United States,* 137 F.2d 713, 716 (10th Cir.1943). Today, title 18, § 3501(a) of the United States Code unmistakably mandates that "[b]efore [a] confession is received in evidence, the trial judge shall, *out of the presence of the jury,* determine any issue as to voluntariness." (Emphasis added); *see also Jackson v. Denno,* 378 U.S. 368, 395, 84 S.Ct. 1774, 1790–91, 12 L.Ed.2d 908 (1964) and Fed.R.Evid. 104(c). However, in this case we conclude the trial court's violation of § 3501(a) constituted harmless error.

Three factors completely mitigate any potential prejudice to Mr. Caro: the trial court's finding that Mr. Caro voluntarily spoke to Agent Young; the exculpatory nature of the statement at issue; and the overall strength of the government's case. As previously discussed, the record supports the trial court's finding that Mr. Caro's statement was voluntary. We agree with the Fifth Circuit's observation that "[t]he presence of the jury during the voluntariness hearing ... does not in and of itself violate due process, particularly when the confession is proven voluntary, because the confessor is not prejudiced by

the jury's presence in that circumstance." *Martinez v. Estelle*, 612 F.2d 173, 177 (5th Cir.1980) (citing *Pinto v. Pierce*, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967)); *see also Tooisgah*, 137 F.2d at 716. Moreover, Mr. Caro's statement to Agent Young was largely exculpatory. While Mr. Caro admitted supplying Mr. Stallings with a very small amount of cocaine on one occasion, he denied any involvement in a conspiracy to distribute cocaine and marijuana. Finally, the strength of the case against Mr. Caro is a significant factor in weighing whether the trial court's error was harmful. *See United States v. Vap*, 852 F.2d 1249, 1254 (10th Cir.1988) (court considered strength of government's case when determining whether materiality hearing in front of jury was harmless error). As discussed *infra*, Part D, the jury had ample evidence, independent of the statement to Agent Young, upon which to find Mr. Caro guilty of the crimes charged.

Under these circumstances, the trial court's failure to determine issues of voluntariness out of the jury's presence as statutorily required did not substantially affect Mr. Caro's rights. The error committed did not undermine the fundamental fairness of Mr. Caro's trial, therefore this contention does not warrant reversal.

## B.

### *Wiretap Notice*

Mr. Caro asserts the United States Attorney did not properly notify him or his attorney regarding the intended use of wiretap evidence. Consequently, he argues the trial court erred in failing to suppress the contents of the telephone wiretap recordings pursuant to Wyo.Stat. §§ 7–3–606(*o*), (p) (Supp.1991) and 18 U.S.C. § 2518(9) (Supp.1991).[1] This argument is without merit.

Under the applicable statutes, the government was required to "furnish" Mr. Caro a copy of the interception order together with a copy of the application for the order. Mr. Caro admits receiving both these documents more than twenty days prior to trial; however, he apparently asserts additional or more formal notice was required. Whether the government provided Mr. Caro with sufficient notice of its intent to use wiretap evidence is primarily a question of law subject to de novo review. *See United States ex rel. Moody v. American Ins. Co.*, 835 F.2d 745, 748 (10th Cir.1987); *In re Tri–State Equipment, Inc.*, 792 F.2d 967, 970 (10th Cir.1986).

■ The record demonstrates Mr. Caro had actual notice he had been intercepted during the court-authorized wiretap as early as July 31, 1990, when Agent Young played one of the intercepted calls during an interview with Mr. Caro. Mr. Caro's attorney was put on notice when he received discovery materials which included the application and order for an April 1989 wiretap. The government supplied Mr. Caro's attorney a copy of the order authorizing the wire interception and the application for wire interception shortly after his appointment to this case because those doc-

---

1. Title 18, § 2518(9) (Supp.1991) of the United States Code provides:

 The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with *a copy of the court order, and accompanying application,* under which the interception was authorized or approved.
 (Emphasis added.)
 The parallel state provision, Wyo.Stat. § 7–3–606(*o*) (Supp.1991), provides:
 The contents of any wire, oral or electronic communication intercepted pursuant to this

 section or evidence derived from that communication shall not be received in evidence or otherwise disclosed in any trial, hearing or other proceeding unless the party offering the evidence, not less than twenty (20) days before the trial, hearing or proceeding, gives notice to the court or hearing officer and all other parties. The court may then order disclosure of the *court order and accompanying application.* If the *order of interception and accompanying application* has previously been disclosed, the offering party may furnish all other parties with the *order of interception and accompanying application* without further order of the court or hearing officer upon proper notice.
 (Emphasis added.)

uments had been disclosed previously in another criminal matter. *See United States v. King*, 936 F.2d 477 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 647, 116 L.Ed.2d 664 (1991). In addition, the government provided Mr. Caro's attorney a pretrial opportunity to review the original tapes and transcripts which it intended to introduce in evidence.

Mr. Caro cites no authority supporting his assertion of a notice requirement above and beyond furnishing the wiretap application and order. Moreover, we find nothing in the statutory language which suggests an additional or more formal notice requirement. Although the language of the state statute differs slightly from its federal analog, under both provisions the most a party is entitled to is the disclosure of the application and order. The purpose of the federal notice requirement is to give the defendant an opportunity to make a pretrial motion to suppress wiretap evidence. S.Rep. No. 1097, 90th Cong., 2d Sess. 105–06 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2195. Absent a Wyoming Supreme Court holding to the contrary, we will assume the purpose of the state requirement is the same. The imposition of a more formal notice requirement would not further this broad purpose.

After careful review, we conclude Mr. Caro received sufficient, timely notice of the government's intent to use wiretap evidence pursuant to Wyo.Stat. §§ 7–3–606(*o*), (p) and 18 U.S.C. § 2518(9). The trial court was therefore entitled to admit the government's wiretap evidence.

### C.

#### *Supplemental Jury Instruction*

Mr. Caro also challenges a supplemental instruction given in response to an inquiry from the deliberating jury. After deliberating approximately two hours, the jury sent out a note with the following questions: "Does the one half kilo of cocaine need to be in a single possession or can it be cumulative over the 17–month period? Do we have to believe there was 500 grams each time? What is the law?" The Court discussed these questions, as well as potential responses, with counsel. Ultimately, the court responded by giving this supplemental instruction:

Ladies and gentlemen of the jury, I refer you to Instruction No. 27, relating to the elements required to be proved for the conspiracy count. And you will recall I reviewed that with you this morning, that there were four elements: First, that the conspiracy described in the indictment was willfully formed and was existing at or about the time alleged; second, that the accused willfully became a member of the conspiracy; third, that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment at or about the time and place alleged; and fourth, that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy to charge.

And I also refer you to Instruction No. 34, which established four counts, II through VI, both inclusive, that the government must prove the following elements: One, knowing or intentional; two, use of a telephone; three, to facilitate commission of an offense constituting a felony.

You will note that a specific quantity of a controlled substance is not specified in either instruction as an element of the crimes charged and referred to therein.

You are also, of course, referred to all of the other instructions of the court.

In reference to Count I of the indictment, it is alleged that there was a conspiracy over a period of time to possess and to distribute in excess of 500 grams of cocaine. You are instructed that the amount of cocaine involved in the government's proof may be accumulated over the period of time alleged for the conspiracy.

In Counts II through VI, both inclusive, it is alleged that telephone calls were made on specific dates to arrange a purchase of one half kilogram of cocaine.

The exact amount of the controlled substance thereafter purchased or sold is not an element of the crime, but it is essential that the telephone calls have

been made for the purchase of that quantity.

You are instructed that at the time of the completion of any such call, if the elements of the crime are all found by you to have been proved, then the crime is complete at the time of the completion of the call, whether or not that specific quantity was, in fact, delivered or not.

Mr. Caro asserts this supplemental instruction misstated the law, mislead the jury, and thereby denied him a fair trial.

■ An erroneous jury instruction requires reversal only if, after a review of the record as a whole, we determine the error to have been prejudicial. We consider all the jury heard, from the jury's standpoint. We do not decide whether the charge was faultless in every particular, but rather whether the jury was misled in any way and whether it had an understanding of the issues and its duties to determine these issues. "The instructions as a whole need only convey a correct statement of the applicable law." *Wheeler v. John Deere, Co.*, 862 F.2d 1404, 1411–12 (10th Cir.1988). Applying this standard, we conclude Mr. Caro was not prejudiced by the supplemental instruction.

Attempting to prudently answer the jury's questions, the trial court first reviewed with the jury the "elements" instructions for the conspiracy count and the communication facility count. The court then instructed the jury that proof of a specific quantity was not an element of those offenses, and reminded the jury to consider the "elements" instructions together with all other instructions of the court. Mr. Caro argues that the proper instruction was no instruction, and therefore this portion of the supplemental instruction was prejudicial in that it over instructed the jury. We disagree.

■ In *United States v. Martinez–Nava*, 838 F.2d 411, 414 (10th Cir.1988) (quoting *United States v. Walker*, 557 F.2d 741, 746 (10th Cir.1977)), we stated, "[w]hen a jury expresses difficulty with potentially conflicting instructions, the trial court should clear away the difficulty 'with concrete accuracy.'" Although the present issue does not involve conflicting instructions, we believe the same principle applies—the court should answer the jury's questions, if possible. *See United States v. Cotton*, 646 F.2d 430, 434 (10th Cir.), *cert. denied*, 454 U.S. 861, 102 S.Ct. 316, 70 L.Ed.2d 159 (1981). Mr. Caro does not seriously argue the first four paragraphs of the supplemental instruction misstate the law. The court was merely reviewing instructions which had already been given and which did not improperly favor either side.

■ We next address Mr. Caro's concern with paragraph five instructing "that the amount of cocaine involved in the government's proof may be accumulated over the period of time alleged for the conspiracy," and paragraph seven referring to "that quantity" in the context of the communication facility charges. The government concedes the first statement was erroneous in light of *United States v. Jenkins*, 866 F.2d 331, 334 (10th Cir.1989) (quantity requirements of 21 U.S.C. § 841(b)(1)(B) are applicable only to sentencing and do not relate to the jury's fact finding function).

We agree the reference to quantity in paragraph five was erroneous, and the reference in paragraph seven was ill-advised. Nevertheless, when determining the propriety of a supplemental instruction, it "must be considered as a whole along with the general charge previously given, and a single sentence is not to be lifted out of context and considered separate and apart from the remainder." *United States v. Abbadessa*, 470 F.2d 1333, 1338 (10th Cir. 1972). When viewed as a whole, the supplemental instruction unmistakably informed the jury that a specific drug quantity was not an element of the crimes charged. The instructions as a whole correctly conveyed the applicable law. Consequently, we see no prejudicial error in the giving of the supplemental instruction under the circumstances of this case.

### D.

### *Sufficiency of Evidence*

Mr. Caro next asserts the evidence is insufficient to support his conspiracy con-

viction. When evaluating a claim of insufficient evidence, we review all the evidence, direct and circumstantial, as well as all reasonable inferences drawn therefrom, in the light most favorable to the prosecution. *United States v. Levario,* 877 F.2d 1483, 1485 (10th Cir.1989). "[W]e must affirm the judgment of conviction if there is record evidence which would allow a rational trier of fact to find the defendant guilty of the crime charged in the indictment beyond a reasonable doubt." *United States v. Young,* 862 F.2d 815, 818 (10th Cir.1988).

■ The government had the burden of proving the following elements to obtain a conspiracy conviction: 1) a conspiracy existed; 2) the defendant knew at least the essential objectives of the conspiracy; and 3) the defendant knowingly and voluntarily became a part of the conspiracy. *United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.1988). Mr. Caro contends the government failed to prove the last two elements because he knew nothing of the Stallings' distribution operation and he did not voluntarily become part of that operation. He asserts the total evidence merely demonstrates he was "a facilitator or individual seller."

■ The existence of a drug distribution conspiracy was amply demonstrated by the testimony of Brenda Stallings, Lisa Buttars, Richard Eugene Christianson and Rhonda Shankle, coconspirators who testified they distributed drugs obtained from Mr. Caro to others in the State of Wyoming. Ms. Stallings, Ms. Buttars and Ms. Shankle also directly testified regarding Mr. Stallings' trips to Phoenix to purchase marijuana and cocaine from Mr. Caro for redistribution in Wyoming.

The extent of Mr. Caro's knowledge of and participation in the conspiracy to distribute marijuana and cocaine is also illustrated in the record. For example, the transcript of a telephone call intercepted on April 15, 1989, reveals that Mr. Caro was willing to allow Lisa Buttars to purchase drugs on Mr. Stallings' behalf after learning Mr. Stallings would be unable to travel to Phoenix. Mr. Caro said "there'd be no problem" as long as he and Mr. Stallings

had an "understanding" that everything would be done the same as before. During the course of subsequent drug related calls, Mr. Caro asked Mr. Stallings if his "people" were in town and Mr. Stallings told Mr. Caro that his (Mr. Stallings') "partner" was at his house. Direct testimony established that on at least two occasions Mr. Caro observed Mr. Stallings providing cocaine to Ms. Shankle. From this evidence, the jury could have reasonably inferred Mr. Caro was engaged in more than a "buyer-seller" relationship with Mr. Stallings.

Because large quantities of drugs can be sufficient to support a distribution conviction, *United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991), the evidence with regard to specific drug deliveries from Mr. Caro to Mr. Stallings further supports the government's case. In September 1988, Mr. Caro delivered a "garbage bag" full of marijuana to Mr. Stallings. Twenty-two pounds of marijuana and one-half kilogram of cocaine was delivered in November 1988; one-fourth kilogram of cocaine in December 1988; one-half kilogram of cocaine in January 1989; one-half kilogram of cocaine and at least ten pounds of marijuana in June 1988; and twelve ounces of cocaine in late April 1989. Again, the jury could have reasonably inferred from the quantities delivered that Mr. Caro was engaged in more than a simple "buyer-seller" relationship with Mr. Stallings.

The law is clear a defendant need not know all the details or all the members of a conspiracy. Moreover, a defendant's participation in the conspiracy may be slight and may be inferred from the defendant's actions so long as the evidence establishes a connection to the conspiracy beyond a reasonable doubt. *Savaiano,* 843 F.2d at 1294. Applying these principles to the record, we hold the evidence was more than sufficient to convict Mr. Caro of conspiracy to distribute drugs.

### E.

#### *Coconspirator Statements*

Mr. Caro contends the trial court erred in admitting statements against him under

Fed.R.Evid. 801(d)(2)(E), which provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. More specifically, he asserts the hearsay statements "should not have been introduced under the co-conspirator hearsay exception, as the court could not conclude as a result of the 'James' hearing that [he] was a part of a conspiracy or that the statements were made 'in furtherance' of the conspiracy."

■■■ This court will not disturb a trial court's evidentiary ruling absent an abuse of discretion. *United States v. Harmon,* 918 F.2d 115, 117 (10th Cir.1990); *United States v. Reyes,* 798 F.2d 380, 383 (10th Cir.1986). Coconspirator's hearsay statements are properly admitted into evidence pursuant to Fed.R.Evid. 801(d)(2)(E) if, by a preponderance of evidence, the trial court finds that 1) a conspiracy existed; 2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and 3) the statement was made in the course of and in furtherance of the conspiracy. *United States v. Johnson,* 911 F.2d 1394, 1403 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 761, 112 L.Ed.2d 781 (1990); *United States v. Hernandez,* 829 F.2d 988, 993 (10th Cir.1987), *cert. denied,* 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988). The trial court may consider the hearsay statements sought to be admitted as well as independent evidence when making these requisite findings. *Bourjaily v. United States,* 483 U.S. 171, 179, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987); *Johnson,* 911 F.2d at 1403. We review such findings under the clearly erroneous standard. *United States v. Peveto,* 881 F.2d 844, 852 (10th Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

■■■ Our review of the record confirms the trial court's findings in this case. During the *James* hearing,[2] Ms. Stallings testified as to the existence of and her participation in a drug conspiracy. In addition,

Ms. Stallings testified as to her personal contacts with Mr. Caro over the course of the conspiracy. This testimony does not implicate Rule 801(d)(2)(E) and therefore independently supports the trial court's findings that a conspiracy existed and that Mr. Caro was a member of the conspiracy. Perhaps more importantly, Ms. Stallings testified that Mr. Caro told her he had supplied the cocaine. This statement is clearly admissable as an admission by a party opponent pursuant to Fed.R.Evid. 801(d)(2)(A).

■■■ We disagree with Mr. Caro's contention that the hearsay statements presented through the testimony of Ms. Stallings and Ms. Buttars and through the intercepted telephone conversations were not made in furtherance of the conspiracy. Mr. Caro insists these hearsay statements are merely narrative—they identify him as the drug source but lack sufficient foundation as to time and place to meet the "in furtherance" requirement. To the contrary, the transcripts of conversations between Gus and Brenda Stallings detailed efforts by Mr. Stallings to contact Mr. Caro in order to obtain drugs. Inasmuch as these drug-related conversations facilitated meetings between Mr. Caro and Mr. Stallings, they clearly furthered the conspiracy to possess and distribute cocaine and marijuana. *See Reyes,* 798 F.2d at 384 (hearsay statements need not actually further the conspiracy to be admissible, it is enough that they are intended to promote the conspiratorial objectives). Moreover, this court has specifically held that statements made by a coconspirator which identify a fellow coconspirator are considered to be made in furtherance of the conspiracy. *United States v. Smith,* 833 F.2d 213, 219 (10th Cir.1987).

For the stated reasons, we uphold the trial court's findings and conclude the court did not abuse its discretion in admitting the challenged statements into evidence.

---

**2.** The admissibility of a coconspirator's statements under Fed.R.Evid. 801(d)(2)(E) is a preliminary matter to be determined by the trial judge after a hearing held outside the presence of the jury. *See United States v. James,* 590 F.2d 575 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

**1558**

### F.

#### New Trial

Mr. Caro also asks this court to order a new trial "in the interest of justice" as to Count I of the Indictment. He asserts that his right to confront his accuser and to present evidence were prejudicially affected when the trial court denied his Motion for New Trial after being advised that an alleged coconspirator, Mr. Stallings, had been apprehended and was therefore available to testify. In support of his Motion for New Trial, Mr. Caro argued the arrest of Mr. Stallings, who was a fugitive at the time of trial, constituted "newly discovered evidence."

 Because new trials are disfavored, we will not reverse the trial court's ruling absent a plain abuse of discretion. *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir.1987). The record here indicates no such abuse. Even though Mr. Stallings' arrest did not constitute evidence in and of itself, the trial judge graciously gave Mr. Caro the opportunity to discover any exculpatory evidence which Mr. Stallings may have been able to provide. After taking that opportunity, Mr. Caro was unable to convince the court "[Mr.] Stallings' testimony would be any different than that already presented at trial, or would 'be such that it would probably produce an acquittal.'" *United States v. Caro*, No. CR90–0028–B at 5 (D.Wyo. Jan. 18, 1991) (quoting *United States v. Sutton*, 767 F.2d 726, 728 (10th Cir.1985)). The trial court's ruling is supported further by the inculpatory nature of Mr. Stallings' original statement to the Wyoming Division of Criminal investigation as it pertained to Mr. Caro.

On appeal, Mr. Caro apparently shifts his theory in support of a new trial from one of newly discovered evidence to one of miscarriage of justice. However, "absent exceptional circumstances or manifest injustice, an issue not raised in the trial court will not be considered on appeal." *United*

States v. McNulty, 729 F.2d 1243, 1269 (10th Cir.1983). The facts of this case do not support application of the plain error or manifest injustice rule. We therefore hold the trial court properly denied Mr. Caro's motion for a new trial.

### G.

#### Reference to Coconspirators' Guilt

 Mr. Caro feebly asserts the government misused evidence of the cooperating coconspirators' guilt and the court failed to give a cautionary instruction limiting the jury's consideration of this evidence to a permissible purpose.[3] Citing *United States v. Austin*, 786 F.2d 986 (10th Cir. 1986), as authority, he asks us to grant a new trial on the basis of plain error.

Mr. Caro's contention is meritless. Our decision in *Austin* is directly inapposite to the present case. In *Austin*, we reversed the convictions of two defendants because the trial court allowed the government to inform the jury that ten other co-defendants had been arrested and convicted. Only two of the ten co-defendants actually testified at trial. More importantly, the trial court failed to give a cautionary instruction limiting consideration of co-defendant guilt to the issue of credibility. *Id.* at 992. In addition, during closing argument, the government impermissibly suggested that guilty birds of a feather flock together. *Id.* at 991. Under those circumstances, we found the government's repeated references to co-defendants who had been tried and found guilty could well have affected the jury's decision. *Id.* at 992.

 In the present case, four cooperating coconspirators testified against Mr. Caro at trial. Each of these coconspirators had entered pleas to related charges and were serving various sentences in federal penitentiaries. All four testified with regard to their pleas, any plea agreements

3. A review of the record quickly reveals defense counsel has misrepresented the facts by suggesting the trial court failed to give appropriate cautionary instructions. In fact, such instructions were given following the direct examina-
tion of each coconspirator, as well as during the general charge to the jury. We remind counsel of his professional responsibility to fairly and accurately present the facts of his case on appeal.

they may have entered into, and any considerations they may have received or may receive in the future as a result of their testimony against Mr. Caro. Immediately following the direct examination of each coconspirator witness, the court read a cautionary instruction which informed the jury that it could consider each coconspirator's guilt only to assess the witness' credibility, and that under no circumstances should the evidence of the witness' guilty plea be used as evidence of Mr. Caro's guilt. The court read a similar cautionary instruction during the general charge prior to the jury's deliberation. During closing arguments, the government again referred to the guilt of the coconspirator witnesses. However, contrary to Mr. Caro's assertion, and contrary to the situation in *Austin,* these references were clearly made in the context of commenting on the witnesses' credibility.

We hold the trial court did not err under these circumstances, and therefore reject Mr. Caro's contention.

### H.

#### Cumulative Error

Finally, Mr. Caro claims that even if no single error cited warrants reversal, the cumulative effect of the trial court's actions were highly prejudicial and denied him a fair trial. After a careful review of the trial record in light of Mr. Caro's many contentions we acknowledged only two trial court errors. We held both those errors were harmless. Therefore, we conclude no cumulative error exists.

Mr. Caro's conviction is AFFIRMED on all counts.