**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN E. SAUNDERS,

Defendant-Appellant.

No. 06-2012
(D.C. No. CR-04-2147 JP)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McCONNELL**, and **GORSUCH**, Circuit Judges.

John Saunders and Jeremy Burnett planned to secure the good life the old-fashioned way: steal it. When their heist plot went awry, Mr. Burnett cut his losses, pled guilty to various charges, and then testified against his one-time confederate John Saunders. At trial, Mr. Saunders attempted to prevent Mr. Burnett's adverse testimony. He also objected to testimony regarding the pre-robbery surveillance of his activities by federal agents. The district court ruled

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

against him on both counts, and the jury convicted. Mr. Saunders now asks us to declare the district court's evidentiary rulings in error, to find that the district court improperly instructed the jury, and to hold that the evidence the prosecution presented was insufficient to support his conviction. We decline these requests and **AFFIRM**.

## I. Background

Dolores Knight, Division President of the Western Commerce Bank of Albuquerque, New Mexico, was in the lobby of her branch bank the morning of October 1, 2004. Through the lobby windows she spied a red, racing-style motorcycle drive up and park at the front entrance to the bank at approximately 10:45 a.m. The rider wore blue jeans, white shoes, a long-sleeved shirt, and a helmet covering his face. In his right hand, he carried a gun. As the gunman pushed through the twin sets of doors opening into the lobby, Ms. Knight maneuvered her way toward a desk with a silent alarm; and when she saw the gunman enter the bank and make immediately for the tellers' desks, she activated it.

The perpetrator emptied each of the three tellers' drawers in turn, carefully avoiding the dye packs interspersed among the cash bundles, though he could not help but acquire some sixty marked bills. He left as he had entered, through the front door, still wearing his helmet with the visor pulled down over his face.

Some moments later—at roughly 10:47 a.m.—a pole camera installed by the Federal Bureau of Investigation captured a red, racing-style motorcycle arriving at a storage unit at the Wyoming Mall Self Storage, located roughly one quarter-mile from the Western Commerce Bank. The vehicle was driven by a man wearing clothes strikingly like those sported by the bank robber. The storage unit belonged to John Saunders. After parking the bike, the rider disappeared inside the unit and emerged shortly thereafter wearing a light-colored, short-sleeved shirt, dark slacks, and dark shoes. He moved the motorcycle inside, then climbed into a white minivan waiting nearby and drove away. FBI agents who obtained a search warrant for the unit later discovered there a red, racing-style motorcycle, a black motorcycle helmet equipped with a full face shield, a long-sleeved pullover shirt, blue jeans, white tennis shoes, and a black semi-automatic Glock .40 caliber handgun, all items matching those carried or worn by the perpetrator, as visible in the bank's security video.

On the strength of this evidence, acquired within hours of the robbery, federal agents secured an arrest warrant for John Saunders. Mr. Saunders was taken into custody around lunchtime on October 1, 2004, at his place of work—a used-car dealership, the uniform for which consisted of dark slacks, dark shoes, and a light yellow, short-sleeved shirt, precisely the ensemble worn by the man who exited the storage unit just before 11:00 a.m. the day of the robbery. Agents discovered a white minivan, like the one in the pole camera surveillance tape,

parked in the dealership lot. Inside the van, officers found a cache of bills amounting to almost half the amount stolen from the Western Commerce Bank, including fifty-nine of the sixty marked bills.

The van belonged to one Jeremy Burnett, another employee at the car dealership. Federal agents detained Mr. Burnett, who eventually told agents he and Mr. Saunders had conspired to rob a bank. According to Mr. Burnett, the idea originated with Mr. Saunders, but Mr. Burnett went along despite his initial skepticism because he needed the money to support his drug habit and meet his mounting financial obligations. Mr. Burnett supplied the weapons and the clothes; Mr. Saunders contributed the know-how and the manpower. On June 2, 2005, Mr. Burnett concluded a plea agreement with the United States, admitting to bank robbery, aiding and abetting, and use of a firearm in relation to the crime, in exchange for his testimony against Mr. Saunders.

A grand jury returned a two-count superceding indictment against Mr. Saunders on March 9, 2005, accusing him of armed bank robbery, 18 U.S.C. §§ 2113(a) & (d), aiding and abetting, 18 U.S.C. § 2, and use of a firearm during the crime, 18 U.S.C. § 924(c)(1)(A)(ii). On May 27, 2005, Mr. Saunders filed a motion in limine seeking to prohibit the government from introducing testimony regarding the anonymous tip that led federal agents first to launch their surveillance and affix a hidden camera to a light pole outside his storage unit. At trial, Mr. Saunders sought to prevent the introduction of Mr. Burnett's testimony,

including Mr. Burnett's reports of conversations between the two men, arguing that the testimony was inadmissible hearsay. He also asked the district court to issue jury instructions identifying Mr. Burnett as a drug abuser. The district court denied all motions and the jury convicted on both counts. Mr. Saunders now appeals from his conviction, contending that the district court's evidentiary and jury-instruction rulings constituted reversible error; he also maintains that the evidence at trial was insufficient to support his conviction.

## II. Surveillance Evidence

Mr. Saunders argues that the evidence of FBI surveillance, which began months prior to the October robbery, is both irrelevant and highly prejudicial. We review a district court's decision to admit evidence at trial for abuse of discretion. *United States v. Scarborough*, 128 F.3d 1373, 1378 (10th Cir. 1997).

Rule 401 of the Federal Rules of Evidence defines as relevant "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Evidence satisfying this standard is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

Agents' testimony regarding the tip that prompted their surveillance and the details of that surveillance itself were highly relevant. The surveillance evidence demonstrated Mr. Saunders's access to a storage locker close by the bank, in

which he parked a motorcycle akin, if not identical, to the one used in the robbery. Surveillance video from outside Mr. Saunders's storage unit showed a man of about Mr. Saunders's height and size wearing clothing similar to that worn by the crime's perpetrator, and within minutes of the robbery. An agent who followed Mr. Saunders in the days leading up to the crime observed him purchase black gloves, the same pair later recovered from his locker in amongst the other clothing worn during the hold-up. All of this evidence tended to connect Mr. Saunders to the bank theft, and none of it, importantly, was of the sort likely to provoke an "emotional response" from the jury or otherwise affect jurors' view of Mr. Saunders apart from their judgment of his guilt or innocence. *United States v. Tan*, 254 F.3d 1204, 1211-12 (10th Cir. 2001).

As for the testimony regarding the anonymous tip that sparked the FBI's interest in Mr. Saunders, it was neither hearsay nor prejudicial. The government did not disclose the contents of the tip or mention that the caller had singled out Mr. Saunders by name. Instead, the government appears to have elicited testimony about the call merely for narrative integrity, to help the jury understand why the FBI began its surveillance regimen. Therefore, we cannot say that this or any other surveillance evidence introduced was either irrelevant or highly prejudicial. Accordingly, we conclude that the district court did not abuse its discretion by admitting the evidence at trial.

### III. Testimony of Jeremy Burnett

Mr. Saunders next argues that the district court erred by permitting Mr. Burnett to testify about his conversations with the defendant. Mr. Burnett's testimony, the defendant contends, is inadmissible hearsay. We disagree.

Mr. Burnett testified regarding both his own out-of-court statements to Mr. Saunders and Mr. Saunders's out-of-court statements to him. These statements pose two distinct hearsay issues. *See* Fed. R. Evid. Rules 801(d)(2)(E), 801(d)(2)(A).

The district court admitted Mr. Burnett's report of his own out-of-court statements under Rule 801(d)(2)(E), which reads, "A statement is not hearsay if—[t]he statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." We have held that a district court may admit as non-hearsay a co-conspirator's out-of-court statements when it finds by a preponderance of the evidence that a conspiracy existed, that both the declarant and the defendant were members of the conspiracy, and that the statements were made in the course and in furtherance of the conspiracy. *United States v. Caro*, 965 F.2d 1548, 1557 (10th Cir. 1992). While the district judge may consider the hearsay statement itself to determine whether a conspiracy existed, *Bourjaily v. United States*, 483 U.S. 171, 181 (1987), we have required district courts to rely on some additional, reliable corroborating evidence to establish the existence of a conspiracy and link the

defendant to it. *United States v. Rascon*, 8 F.3d 1537, 1540-41 (10th Cir. 1993). We review the district court's findings of fact regarding the existence of a conspiracy for clear error, *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996), and its ultimate evidentiary decision for abuse of discretion, *United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir. 1993).

Here, the record contains a wealth of evidence establishing the existence of a conspiracy between Mr. Saunders and Mr. Burnett. To review a few of the more telling pieces of corroborating evidence: a search of Mr. Saunders's locker turned up clothing loaned to the defendant by Mr. Burnett, highly similar to that worn by the perpetrator of the crime; agents also discovered Mr. Burnett's handgun in the defendant's locker, a weapon that matched the description of the gun used in the robbery; the government presented evidence of the two men's friendship stretching over a period of years; and it introduced multiple pieces of evidence establishing Mr. Saunders's poor financial health before the robbery, pointing to a motivation for the crime. In addition, Mr. Burnett's own in-court testimony, which was subject to cross-examination, tended to corroborate the existence of the conspiracy.

The defendant argues that Mr. Burnett never truly believed that Mr. Saunders intended to rob a bank and consequently, no conspiracy existed. Indeed, he says Mr. Burnett thought he was joking right up to the point when he gave Mr. Burnett his share of the loot. Neither Mr. Burnett's testimony nor his actions,

however, bear out this theory. While Mr. Burnett claimed to have been initially skeptical about Mr. Saunders's scheme, by his own admission he decided to participate in the plan as his financial woes mounted. And his actions certainly indicate he viewed the heist plot as real enough: he helped Mr. Saunders case multiple banks, he contributed the clothing Saunders wore during the hold-up, and he provided the weapon as well. From this information and Mr. Burnett's own statements, the district court could conclude that a conspiracy existed, that Burnett and Saunders were its principals, and that their conversations about robbing banks were made in furtherance of their plan. *See Caro*, 965 F.2d at 1557.

The 801(d)(2)(E) exception for co-conspirators does not apply, however, to Mr. Saunders's out-of-court statements, for the simple reason that Mr. Saunders is not a "coconspirator of a party," he *is* the party. Fed. R. Evid. 801(d)(2)(E). But Mr. Saunders's conversations with Mr. Burnett do qualify as Rule 801(d)(2)(A) statements by a party. Rule 801(d)(2)(A) provides that a statement is not hearsay if it "is offered against a party and is the party's own statement." The government did not explicitly argue for this exception below, but the district court noted when admitting the testimony encompassing Mr. Saunders's statements that "[p]resumably, [Saunders's statements] also fit[] under 801(d)(2) as an admission against personal interest." Appellees' App. 379. The district court is correct.

We hold the court did not abuse its discretion by admitting the testimony of Jeremy Burnett.

## IV.  Jury Instructions

Mr. Saunders requested that the district court issue Tenth Circuit Pattern Jury Instruction 1.13 with specific reference to Jeremy Burnett.  This instruction would have directed the jury to consider especially the trial testimony concerning Mr. Burnett's "character for truth-telling" and "reputation for truthfulness" in his community.  Tenth Circuit Criminal Pattern Jury Instruction 1.13 (2005 ed.).  There was no such testimony, however.  Mr. Burnett's brother testified that Jeremy lied to him on several occasions, but he offered no opinion as to Jeremy's character for truth-telling or reputation in the community.  Given this, the district court rightly opted to issue a more general impeachment instruction, directing the jury to weigh the credibility of all witnesses in light of the evidence.  Appellants' App. 67.

Mr. Saunders also contends that the district court should have identified Mr. Burnett by name in its instruction regarding witnesses who are drug abusers. *See* Tenth Circuit Pattern Jury Instruction 1.16.  In effect, he objects to the wording of the instruction.  District courts, however, wield "substantial discretion in fashioning jury instructions,"*United States v. Schuler*, 458 F.3d 1148, 1156 (10th Cir. 2006), including especially their wording, *United States v. Wolny*, 133 F.3d 758, 765 (10th Cir. 1998).  We review the court's instructions only to ensure

that they "cover[ed] the issues presented by the evidence and constitute[d] correct statements of the law." *United States v. Davis*, 953 F.2d 1482, 1492 (10th Cir. 1992). We are satisfied the instruction here did both. The court was under no obligation to list particular witnesses who met the definition of "drug abuser." And in fact, there was good reason not to do so. The record contained evidence that in addition to Mr. Burnett, Mr. Saunders and at least one other witness also abused drugs. Had the district court named Mr. Burnett as a drug abuser, it would have been obligated to name these witnesses as well. Tellingly, the defendant objected to the mention of any witness other than Mr. Burnett. Given this scenario, we conclude the district court did not abuse its discretion by issuing the generic model instruction.

Both instructions 1.13 and 1.16 covered the issues presented by the evidence and accurately stated the controlling law. We find no error.

### V. Sufficiency of the Evidence

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the government, the direct and circumstantial evidence and all reasonable inferences drawn therefrom would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997). Substantial direct and circumstantial evidence in this case—from the bank and storage unit surveillance tapes, to the bank employees'

testimony, to the items recovered from both Mr. Saunders's storage unit and the white minivan, to the testimony of Jeremy Burnett—connected Mr. Saunders to the crime. Viewed in the light most favorable to the prosecution, we are confident that a reasonable jury could conclude beyond a reasonable doubt that Mr. Saunders was guilty.

## VI. Conclusion

We **AFFIRM** the district court's decision to admit evidence of the FBI's surveillance of Mr. Saunders. We **AFFIRM** the district court's admittance of Jeremy Burnett's testimony. We **AFFIRM** the district court's jury instructions, and we **AFFIRM** Mr. Saunders's conviction.

Entered for the Court,

Michael W. McConnell
Circuit Judge